IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

Zurich American Ins. Co., et al,

                Plaintiffs,      Case No. 1:16-cv-2312

v.                             Michael L. Brown
                             United States District Judge
Henry C. Hardin III, et al.,

                Defendants.

_____/

## ORDER

Before the Court are the parties' cross-motions to exclude expert testimony (Dkts. 67, 69) and Plaintiff's Motion in Limine No. 2 to Bar Defendants' Counsel from Repeating or Espousing Certain Improper Expert Opinions ("Motion in Limine No. 2"). (Dkt. 80). On February 15, 2018, the Court held a hearing with Plaintiffs and Defendants to hear argument on the pending motions. *See* Dkts. 96, 98. The Court made certain rulings at that hearing, which are repeated below for clarity in the record. In consideration of the arguments made before the Court at that hearing and in the parties' briefs, the Court rules as follows.

1

## I.   BACKGROUND

On June 28, 2016, Zurich American Insurance Company, American Zurich Insurance Company, and The Zurich Services Corporation (collectively, "Plaintiffs") filed suit against Defendants Henry C. Hardin III ("Hardin") and Professional Management Services Group, Inc. ("PMSG") (collectively, "Defendants").  Plaintiffs allege that Hardin should be held liable for more than $16 million of judgments obtained against PMSG because Hardin is the alter ego of PMSG.  Dkt. 8 at 2.  According to the Amended Complaint, Hardin "abused [PMSG's] corporate form for his own personal benefit" such that the corporate veil should be pierced, and Hardin should be held personally liable for the judgments.  *Id.* at 7.  Plaintiffs intend to prove, among other things, that Hardin commingled his corporate and personal finances by transferring substantial cash to himself from PMSG, siphoned-off PMSG's corporate funds to pay personal expenses for his family, and issued unsecured, interest-free loans from PMSG to himself.  *See id.* at 10-11.

During the discovery period, both Plaintiffs and Defendants designated expert witnesses to testify on their behalf pursuant to Fed. R. Civ. P. 26(a)(2).  Plaintiffs' accounting and finance expert, Robert J. Taylor, IV, intends to offer at trial expert opinions regarding Defendants' corporate structure and finances, including whether certain financial transactions at issue are consistent with accepted business practices, in support of Plaintiffs' contention that Hardin acted as the alter ego of PMSG.  Expert Report of Robert J. Taylor ("Taylor Expert Report"), Dkt. 69-1 at 1.  Defendants intend to call their expert, Jessica Talley-Peterson, to rebut these claims.  Expert Report of Jessica Talley-Peterson ("Peterson Expert Report"), Dkt. 67-2.  Both Mr. Taylor and Ms. Peterson submitted expert reports and were deposed by the opposing parties.  The opinions in those reports, as illuminated by expert deposition testimony, are the subject of the two cross-motions to exclude before the Court.  (Dkts. 67, 69).

Plaintiffs also filed Motion in Limine No. 2, which seeks to bar Defendants' counsel from referencing at trial the same opinions that Plaintiffs move to exclude as improper expert testimony in their *Daubert* motion.  (Dkt. 80).  Though Motion in Limine No. 2 was

directed solely at Ms. Peterson's expert testimony, Defendants responded that the expert opinions Plaintiffs move to bar—particularly opinions concerning trade custom and common business practices—could otherwise be admitted through lay opinion testimony given by Hardin and B. Anthony Foley ("Foley").  Dkt. 87 at 1-2.

The cross-motions to exclude bear on Motion in Limine No. 2, so the Court will address each in turn.

## II.    LEGAL STANDARD

### A.    Expert Testimony Under Rule 702

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert opinions.  It provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.  The party seeking to introduce expert testimony must establish, by a preponderance of the evidence, the factors set out in Rule 702.  *United States v. Frazier*, 387 F.3d 1244, 1260 (11th

4

Cir.2004).  The Supreme Court discussed the standard of admissibility of expert testimony under this rule in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).  Under Daubert,

> expert testimony may be admitted into evidence if: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562–63 (11th Cir.1998) (footnote omitted) (citing Fed. R. Evid. 702; *Daubert*, 509 U.S. at 589).  *Daubert* enumerated several factors which may be used in assessing expert testimony, including (1) whether a theory or technique applied by the expert can be or has been tested, (2) whether the theory has been subjected to peer review and publication, (3) in the case of a particular scientific technique, the Court should consider the known or potential rate of error, (4) and whether the theory or technique has gained general acceptance in the relevant community.  *Daubert*, 509 U.S. at 593–94.  The Supreme Court emphasized that the Rule 702 inquiry is a flexible one.  *Id.* at 594.

*Daubert* focused on the admissibility of scientific expert testimony. In *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999), the Supreme Court held that *Daubert's* methodology applies equally to experts who are not scientists. The Court held that a trial court may consider one or more of the specific factors mentioned in *Daubert* in assessing non-scientific expert testimony, but that the trial court retains discretion to decide if non-scientific testimony is reliable and relevant to the case. *Kumho Tire*, 526 U.S. at 141.

"Experts may be qualified in various ways." *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004). An expert's training or education can provide one means by which an expert may qualify to give certain testimony. *Id.* at 1260-61. And experience in a particular field may also qualify an expert to offer an expert opinion. *Id.* The district court, therefore, must focus its inquiry on whether the expert has the requisite knowledge, skill, experience, training, and education to offer the testimony he intends to introduce. Fed. R. Evid. 702.

With respect to reliability, trial courts must assess "whether the reasoning or methodology underlying the testimony is …valid and whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592-93. This inquiry must focus "solely on the principles and methodology [of the expert], not on the conclusions that they generate." *Id.* at 595.

When conducting this inquiry for experts offering non-scientific testimony, such as the business and accounting testimony offered here, the advisory committee notes for Rule 702 suggest that courts consider factors such as:

(1)     Whether the [expert is] proposing to testify about matters growing naturally and directly out of research conducted independent of the litigation, or whether [the expert] has developed the opinion expressly for purposes of testifying;

(2)     Whether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion;

(3)     Whether the expert has adequately accounted for obvious alternative explanations;

(4)     Whether the expert is being as careful as he would be in his regular professional work outside his paid litigation consulting; and

(5)     Whether the field of expertise claimed by the expert is
        known to reach reliable results for the type of opinion
        the expert would give.

Fed. R. Evid. 702, advisory committee note (2000 amends.) (citations
and internal quotations omitted); *see also Kumho Tire*, 526 U.S. at 149-
52.

Finally, expert testimony must actually assist the trier of fact to
understand the facts in evidence or to determine a fact in issue.  Fed. R.
Evid. 702(a).  Expert testimony assists the trier of fact "if it concerns
matters that are beyond the understanding of the average lay person."
Frazier, 387 F.3d at 1262.  Expert testimony generally will not help the
trier of fact "when it offers nothing more than what lawyers for the
parties can argue in closing arguments."  *Id.* at 1262-63.

Principally, Rule 702 imposes a duty on trial courts to act as
"gatekeepers" to ensure that speculative, unreliable, and irrelevant
opinions do not reach the jury.  *See Daubert*, 509 U.S. at 589 n.7;
*McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir.
2002); *McClain v. Metabolife Intern., Inc.*, 401 F.3d 1233, 1237 (11th
Cir. 2005).  At the same time, a court must also remain mindful of the
delicate balance between its role as a gatekeeper and the jury's role as

8

the ultimate fact-finder.  The gatekeeping function "is not intended to supplant the adversary system or the role of the jury." *Allison v. McGhan Medical Corp.*, 184 F.3d 1300, 1311 (11th Cir. 1999). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

B.    Expert Testimony in an Alter Ego Case

Provided that the expert is qualified and used a reliable methodology, expert testimony could assist the trier of fact in this alter ego case.  Expert testimony, for example, can help the jury understand the complex corporate transactions at issue.  The evidence proffered against the Defendants allegedly includes complex transfers of notes into and out of PMSG, loans booked as notes receivable and repaid through salary disbursements, improper payments from PMSG to Hardin, and other complicated transactions.  Most reasonable jurors will have little familiarity with these financial transactions, and experts should be permitted to help the jury parse through voluminous corporate records to better understand what occurred.  *United States v.*

9

*Rouco,* 765 F.2d 983, 995 (11th Cir.1985) (expert testimony admissible if it offers something "beyond the understanding and experience of the average citizen"); *Frazier*, 387 F.3d at 1262.  To be clear, an expert must conduct an independent analysis when reviewing the records.  He or she may not simply recite a witness's testimony about the facts surrounding a transaction and refashion it as an expert opinion.  *See Tchatat v. City of New York*, 315 F.R.D. 441, 444 (S.D.N.Y. 2016) ("Mere narration…fails to fulfill *Daubert's* most basic requirements.").

Expert testimony could also assist the jury in understanding the factors that it must consider when determining whether the plaintiff has established alter ego liability.  *Dearth v. Collins*, 441 F.3d 931, 934 (11th Cir. 2006) (discussing alter ego doctrine); *Baillie Lumber Co. v. Thompson,* 279 Ga. 288, 289–90 (2005) (noting factors for piercing the corporate veil under Georgia law).  This could include testimony that explains terms like co-mingling of assets, testimony that demonstrates the siphoning-off of corporate funds to pay personal expenses, testimony that defines or identifies interest-free loans from the corporation to the shareholder, or testimony that shows how transfers may have impacted PMSG's ability to pay legitimate debt.  *See, e.g., Manhattan Constr. Co.*

10

*v. K&E Constr. Co.*, No. 1:80-cv-1258-HTW, 1988 WL 150690, at *7-8 (N.D. Ga. Dec. 12, 1988) (noting factors of alter ego liability). Testimony on these issues would assist the jury in understanding the facts and applying those facts to the relevant law.

Further, an essential component of piercing the corporate veil is "the idea that the corporate entity has been used as a subterfuge and to observe it would be to work an injustice." *Raynor v. American Ins. Co.*, 176 Ga.App. 564, 337 S.E.2d 43, 45 (Ga. Ct. App. 1985). Georgia courts "do not disregard that separate identity unless it serves to promote injustice or fraud." *Boafo v. Hosp. Corp. of Am.,* 177 Ga.App. 75, 338 S.E.2d 477, 479 (1985). In other words, there "'must be evidence of abuse of the corporate form.'" *Soerries v. Dancause,* 248 Ga.App. 374, 546 S.E.2d 356, 358 (2001) (quoting *J–Mart Jewelry Outlets v. Standard Design,* 218 Ga. App. 459, 462 S.E.2d 406 (1995)). Different terms are used, such as "sham," "wrong," or "abuse," but the general idea is that there must be some sort of culpable conduct between the corporation and the shareholder that is inconsistent with the corporation's separate existence and that is injurious to the corporation's ability to meet the corporation's obligations to creditors.

11

*Id.* As a result, expert testimony about whether or not certain actions at issue constitute acceptable business practices should also be permitted as helpful to the jury. This issue will be addressed more fully in the Court's discussion of the motions to exclude.

## C.   Lay Testimony Under Rule 701

Motion in Limine No. 2, like the cross-motions to exclude, concerns expert testimony under Rule 702. But, it also concerns lay opinion testimony under Rule 701. The admission of lay opinion testimony is guided in federal court by the Federal Rule of Evidence 701. According to Rule 701, a lay witness may offer opinions that are: "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. The advisory committee has explained that the purpose of subsection (c) is "to eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing." Fed. R. Evid. 701, advisory committee note. Rule 701 does not, however, "prohibit lay witnesses from testifying based on

particularized knowledge gained from their own personal experiences." *United States v. Hill*, 643 F.3d 807, 841 (11th Cir. 2011).

## III.   DISCUSSION

### A.   Defendants' Motion to Exclude Expert Testimony of Robert J. Taylor, IV.

According to his expert report ("Taylor Expert Report", Dkt. 69-1), Mr. Taylor is a certified public accountant with more than thirty-five years' experience in accounting, financial consulting, and valuation for both publicly-traded and privately-held companies in a wide range of industries. *Id.* at 2. Defendants do not challenge, and the Court agrees, that Mr. Taylor is qualified to testify in this case as an expert. *See* Fed. R. Evid. 702; *see also* Transcript from Proceedings Held on February 15, 2018 ("Hearing Transcript"), Dkt. 98 at 4:2-16.

In retaining Mr. Taylor, Plaintiffs asked that he "provide an independent assessment of Defendants' financial information and certain transactions" and "opine, based on [his] business, financial, and accounting experience, on whether the financial transactions at issue are consistent with accepted business practices." Dkt. 69-1 at 1. Mr. Taylor has thus offered opinions about Defendants' business, financing, and corporate structure.

13

1. **Mr. Taylor's opinions that certain practices are "contrary to ethical, fair and accepted business practices."**

In four of his nine summary observations, Mr. Taylor refers to certain business practices as "contrary to ethical, fair and accepted business practices." Dkt. 69-1 at ¶¶ 3, 6, 7, 9. Defendants argue that this testimony should be excluded as an impermissible attempt to tell the jury what result to reach or to suggest to the jury that the Defendants alleged conduct constitutes grounds for piercing the corporate veil. *See* Dkt. 69 at 5; *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990) ("A witness also may not testify to the legal implications of conduct; the court must be the jury's only source of law.").

Plaintiffs and Defendants agree that any testimony about what is "legal," "ethical" or "fair"—from either expert—will not be offered at trial and shall be excluded. *See* Hearing Transcript at 29:18-25; 31:20-21; Dkt. 70 at 15 (Plaintiffs concede that "Mr. Taylor will not refer to 'ethical' or 'fair' practices at trial.").

The Court clarifies, however, that an opinion that Hardin's or PMSG's conduct was contrary to (or consistent with) acceptable business practices is admissible. Hearing Transcript at 21:24-25;

14

*Tindall v. H&S Homes, LLC*, No. 5:10-cv-044, 2012 WL 3241885, at *12 (M.D. Ga. Aug. 7, 2012) (experts "are commonly allowed to provide testimony about whether there has been a deviation from normal or standard business practices"). Defendants have not objected to that testimony, and the Court agrees such testimony is appropriate and helpful to the jury. It is only legal or ethical conclusions drawn about any deviation from acceptable business practices that must be avoided.

   2.   **Mr. Taylor's testimony that his opinions are based in part on "common sense" or the notion that certain business practices are "wrong."**

Twice during his deposition, Mr. Taylor answered that certain of his opinions were based on "common sense." *See* Deposition of Robert Taylor ("Taylor Dep."), Dkt. 68-1, 50:22-23; 65:21. Defendants argue that any opinion based on common sense is not the proper subject of expert testimony as contemplated by Rule 702. It is true that "matters of common sense typically do not require or allow for expert testimony" and are not the proper basis for expert testimony. *Rosenfeld v. Oceania Cruises, Inc.*, 682 F. 3d 1320, 1331 (11th Cir. 2012). We expect the fact finder to have common sense and to apply that common sense on his or her own to the facts presented. But, the complete exchange between

15

Mr. Taylor and defense counsel during the deposition makes clear that Mr. Taylor's opinions are not based exclusively on common sense.

In Opinion 1 of his expert report, Mr. Taylor described Hardin's use of a Note Receivable account with PMSG.[1]  Dkt. 69-1 at ¶ 1.  Mr. Taylor opined that, "[b]ased on [his] business, financial and accounting experience, the pervasive and significant use of such an account is highly unusual, contrary to accepted business practices, and created an environment where PMSG's internal financial controls were threatened and where an accurate understanding of PMSG's financial condition was made more difficult."  *Id.*   When pressed at deposition about his basis for concluding that gaining an accurate understanding was "made more difficult," Mr. Taylor responded that it was "common sense." Taylor Dep., 50:22-23.  But, he did not stop there; instead, he described how he "review[ed] all the materials in this case" (*id.* at 51:1-2) and to draw a comparison to his past experiences as a financial consultant for turnaround companies.  *See id.* at 51:1-52:7.  Mr. Taylor's analysis of

---

[1] Defendants' motion incorrectly links Mr. Taylor's testimony that he used "common sense" (Taylor Dep., 50:22-23) to his basis for Opinion 2 of the expert report.  A close review of the deposition transcript makes clear that Taylor made his statement at 50:22-23 in response to questions about Opinion 1 of his expert report.

the case materials and of his experience working with turnaround companies provides a valid basis for Opinion 1 far beyond simple common sense.  His opinion meets the requirements for admissibility under Rule 702.

The Court reaches the same conclusion with respect to Opinion 4 of Mr. Taylor's report.  In Opinion 4, Mr. Taylor concluded that "there is no reasonable purpose" for Mr. Hardin to transfer funds from PMSG to his wife, Linda Hardin, to pay personal household expenses.  Dkt. 69-1 at ¶ 4.  When prompted at deposition to provide the basis for his opinion, Mr. Taylor first said that "common sense" led him to this conclusion.  Taylor Dep. 65:21-23.  But again, Defendants' parsing of Mr. Taylor's testimony fails to tell the full story.  Just eight lines later, Mr. Taylor elaborated that his opinion was based on his understanding of common business practice, his review of the relevant deposition testimony, and the fact that he had never seen this type of transfer activity before.  *Id.* at 66:7-14.  He provided a reliable basis for Opinion 4.

Defendants also challenge Mr. Taylor's statement at deposition that Mr. Hardin's use of funds transferred from PMSG to SCN to pay

17

insiders rather than Zurich (as discussed in Opinion 3 of Mr. Taylor's expert report) was "wrong." Dkt. 69 at 3. In a vacuum, a judgment that certain business practices are "wrong" is likely not a reliable basis for expert testimony. But the entirety of the record, again, reveals more. Mr. Taylor stated that his opinion was based, in part, on his experience as an accountant. *See* Taylor Dep. 61:3-11. Specifically, he relied on his experience consulting for corporations in turnaround situations and advising them on how to coordinate with creditors. *See* Taylor Dep. 61:12-62:22. He also drew on that experience to explain a strawman order of payment during a corporate wind-down. *See id.*

A complete review of the record confirms that the expert opinions contained in Mr. Taylor's expert report were based on his specialized knowledge and expertise in the business and financial industries, consistent with Rule 702's requirements for expert testimony. Any statement Mr. Taylor made at deposition about using "common sense" to inform his opinions, or believing certain business practices to be "wrong," must be considered in the context of his entire exchange with defense counsel. Having reviewed the record in full, the Court finds that Mr. Taylor articulated a reliable basis for Opinions 1, 3, and 4, all

of which will assist the jury and meet the requirements of Rule 702. The Court, therefore, denies the motion to exclude as to those opinions.

### 3.  Mr. Taylor's opinions about salaries paid to family members and PMSG's threatened internal financial controls.

In Opinion 6 of Mr. Taylor's expert report, Mr. Taylor noted that Hardin paid six-figure, annual salaries to several family members and opined that payment of excessive salaries to family members represents a "diversion of funds from trade creditors and other capital providers." Dkt. 69-1 at ¶ 6.  Defendants argue that this opinion suggests to the jury that the salaries were excessive, even though Mr. Taylor testified at deposition that he "ha[d] not reached an opinion that they were in fact [excessive]."  Taylor Dep. 72:18-19.

Defendants raise a similar challenge to Opinion 1.  In that opinion, Mr. Taylor opines that Hardin's use of the notes receivable account "created an environment where PMSG's internal financial controls were threatened," but does not reach a conclusion as to whether or not the threat materialized into any actual harm.  Dkt. 69-1 at ¶ 1; Dkt. 69 at 8.  Defendants charge that this opinion is mere speculation.  The Court reads Opinions 6 and 1 and Mr. Taylor's testimony differently.

Mr. Taylor does not opine in his report and did not testify in his deposition that the salaries paid to Hardin's family were excessive relative to the work performed.   Indeed, the Court understands from the record that Mr. Taylor will refuse any such inference.   Hearing Transcript at 40:9-13.   That determination is properly left to the jury. *See, e.g., In re Delta/Airtran Bagage Fee Antritrust Litig.*, No. 1:09-md-2089, 2017 WL 1186416, at *13, 15 (N.D. Ga. Mar. 28, 2017) ("it is well-settled that an expert may not 'merely tell the jury what result to reach'") (citation omitted).   But Mr. Taylor may, indeed, testify about whether certain conduct is or is not indicative of a threat to the corporate form. *See id.*   Opinion 6 does just this—it helps the jury identify a potential threat to the corporate form.   If the jury reviews the evidence and determines Hardin paid excessive salaries to family members, it may conclude that Hardin was diverting funds from legitimate creditors, which is relevant to alter ego liability.   *See* Hearing Transcript at 37:16-38:3.   And, to the extent Defendants disagree with the salary figures Mr. Taylor gleaned from the records, they may cross-examine him on that score. *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1311 (11th Cir. 1999) ("The gatekeeper role,

20

however, is not intended to supplant the adversary system or the role of the jury: '[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'") (citing *Daubert*, 509 U.S. at 596).

The Court finds that Opinion 6 regarding salary payments meets Rule 702's requirements because Mr. Taylor is qualified to offer the opinion, his testimony is reliably based on a review of the records, his testimony will assist the jury, and there is no risk of prejudice. Defendants' arguments for exclusion of Opinion 6 go to the weight of the evidence and not to admissibility. *Jones v. Otis Elevator Co.*, 861 F.2d 655, 662-63 (11th Cir. 1988) ("weaknesses in the underpinnings of the expert's opinions go to its weight rather than its admissibility"); *Seamon v. Remington Arms Co., LLC*, 813 F.3d 983, 990 (11th Cir. 2016) ("The weight to be given to admissible expert testimony is a matter for the jury.").

The Court reaches the same conclusion with respect to Opinion 1. Testimony about a notes receivable account, the use of interest-free notes, and the fact that there may not have been a repayment schedule

are all relevant to the jury's inquiry of whether or not Hardin used PMSG as an "instrumentality for the transactions of his own affairs," and more specifically, whether or not he commingled personal and corporate finances or took out unsecured, interest-free loans from the corporation.  *See Manhattan Constr. Co*, No. 1:80-cv-1258, 1988 WL 150690, at *7-8 (N.D. Ga. 1988).   Mr. Taylor's testimony that this activity threatens internal financial controls helps explain to the jury why this conduct is not an appropriate business practice.   The testimony does not present a risk that the jury will be confused as to whether Mr. Taylor actually concluded that the "threat" materialized and negatively impacted PMSG's financial controls.   To the extent Defendants fear otherwise, they may cross-examine Mr. Taylor on that point to avoid any such confusion.    But the Court finds that with respect to Opinion 1, Mr. Taylor has the requisite expertise, Mr. Taylor has used reliable methodology, and the testimony will assist the jury.  It is admissible.

### D.   Plaintiffs' Motion to Bar Opinions of Jessica Peterson.

According to her expert report, Ms. Peterson is a certified public accountant with more than fifteen years' experience in public and

forensic accounting across industries. Peterson Expert Report at 3. Plaintiffs do not challenge, and the Court agrees, that Ms. Peterson is qualified to testify in this case as an expert. See Fed. R. Evid. 702; *see also* Hearing Transcript at 4:2-16.

1.   **Plaintiffs' unopposed arguments to exclude Opinion A, Opinion E, portions of Opinion D and Opinion G(iv) in Ms. Peterson's expert report.**

First, Plaintiffs move to exclude Opinion A of Ms. Peterson's report because it "does not rebut any contrary subject matter contained in Mr. Taylor's report." Dkt. 67 at 4; *see also* Expert Report of Jessica Peterson ("Peterson Expert Report"), at 4. Federal Rule 26(a)(2)(D)(ii) permits the submission of a rebuttal expert report "if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party" in their expert report. *See ITT Corp v. Xylem Grp., LLC*, No. 1:11-cv-3669, 2012 WL 12871632, at *3 (N.D. Ga. Oct. 15, 2012) (discussing proper and improper use of rebuttal expert reports). A court may exclude evidence submitted in a rebuttal report that does not rebut the opposing party's proffered expert testimony, but instead expands the case-in-chief. *Id.* ("A party's opportunity to submit a rebuttal expert report is not license to expand

23

its case-in-chief."). Defendants do not object to Plaintiffs' position, and concede that the testimony contained in Opinion A of Ms. Peterson's expert report will not be offered. Hearing Transcript at 11:11-20. The Court finds that Opinion A is not proper rebuttal testimony and is excluded.

Second, Defendants also do not object to Plaintiffs' request that Opinion E be excluded. Hearing Transcript at 11:22 – 12:5. Opinion E is not proper expert testimony because it does not involve expert analysis or convey an opinion based on an expert's knowledge and reliable methodology, but instead offers essentially a narration of deposition testimony. *Tchatat v. City of New Yorki*, 315 F.R.D. 441, 444 (S.D.N.Y. 2016) ("Mere narration…fails to fulfill *Daubert's* most basic requirements."); *see also* Peterson Expert Report, at 6 (recounting Mr. Hardin's deposition testimony). Mere regurgitation of deposition testimony is not helpful to the jury in satisfaction of Rule 702's requirements and must be excluded. Opinion E, therefore, is excluded.

Third, Plaintiffs move to exclude portions of Opinion D of Ms. Peterson's report. In that opinion, Ms. Peterson characterizes a certain party as the "rightful owner" of assets. Peterson Expert Report, at 5.

This portion of the opinion is not proper expert testimony because Ms. Peterson reached the conclusion simply by accepting or echoing deposition testimony from Defendant Hardin rather than by conducting her own expert analysis. Defendants do not object to the exclusion of this testimony, and the Court finds that this portion of Opinion D is excluded. Hearing Transcript at 12:17-24.

Fourth, Plaintiffs move to exclude Opinion G(iv) in which Ms. Peterson opines that "the loans were paid back in full. *See* Peterson Expert Report, at 8. As with the opinion immediately above, it is clear that Ms. Peterson reached this conclusion simply by accepting or echoing deposition testimony from various defense witnesses rather than by conducting her own expert analysis. Defendants do not object to the exclusion of this testimony. As discussed at the February hearing, the Court finds that Opinion G(iv) is also excluded for failure to meet Rule 702's requirement that the expert opinion be based on reliable methodology. *See* Hearing Transcript at 13:1-6.

2. **Ms. Peterson's expert testimony that PMSG "properly accounted" for transactions to Hardin.**

Plaintiffs move to exclude Ms. Peterson's opinion that certain conduct was "proper." Specifically, Plaintiffs single-out Opinion B, in

which she states that "PMSG properly accounted for transactions to Henry Hardin or made on behalf of him."  Peterson Expert Report, at 5. Plaintiffs charge that this opinion lacks a basis in a reliable methodology because it labels a certain practice "proper" without linking that assessment of propriety to whether or not this practice is compliant with accounting rules or otherwise generally accepted or appropriate in business.  Defendants respond that Ms. Peterson's opinion is a rebuttal to Mr. Taylor's assertions that certain conduct by Defendants is highly unusual or counter to accepted business practices. Dkt. 75 at 2; Hearing Transcript at 14:22 – 15:8.

A word like "proper" can have many different meanings.  As discussed at the hearing, it is reasonable to interpret Ms. Peterson's use of the term "proper" to mean that she believed certain conduct to be common and consistent with good corporate governance.  That interpretation makes Ms. Peterson's use of the term "proper" a fair rebuttal to Mr. Taylor's testimony that certain conduct was unusual or counter to accepted business practices.  *See generally* Hearing Transcript at 21:17 - 23:18.  Ms. Peterson testified at deposition that she generated her opinion that the conduct was proper using reliable

methods – by reviewing the company's tax returns, general ledgers, and other records documenting transactions between PMSG and other entities. This is largely the same analysis that Mr. Taylor used in reaching his opinions. Peterson Deposition Transcript ("Peterson Dep.") 101:14-23. The Court also finds that this testimony is helpful to the jury because it provides a different expert analysis about whether or not certain conduct is an appropriate business practice.

During the hearing, Plaintiffs expressed concern that because Ms. Peterson does not tie her use of the term "proper" to generally accepted business practices, she is "mak[ing] a decision on propriety, that's something for the jury to decide." Hearing Transcript at 13:17-18. The Court does not view Ms. Peterson's use of the term "proper" to be so cleanly separated from an admissible opinion that certain conduct is an acceptable business practice. By saying that PMSG "properly accounted" for transactions, Ms. Peterson seems to opine that this accounting practice is something that she has seen before in other companies, that does not strike her as unusual, and that is a generally accepted business practice. If Plaintiffs wish to prove to the jury that the scope of Ms. Peterson's opinion is more limited than the natural

suggestion of the term "proper," they may cross-examine her on that score. But, the Court finds that this type of testimony may be helpful to a jury in an alter ego case.

"No uniform standard exists for determining when a corporation is the alter ego of its owners; each case must be decided based upon the totality of the circumstances." *Manhattan Const. Co. v. K&E Const. Co.*, No. 1:80-CV-1258-HTW, 1988 WL 150690, at *7 (N.D. Ga. Dec. 12, 1988). Alter ego cases, therefore, require a nuanced analysis of corporate behavior that may be unusual relative to other accepted business practices, conduct that may introduce risk to the integrity of the corporate form, or transactions that may commingle personal and corporate funds. So, the lines drawn in an alter ego case between what will assist the trier of fact and what may not assist the trier of fact are not as black and white as the Plaintiffs might hope.

The Court has decided, and the parties agree, that Ms. Peterson is qualified to testify as an expert in this case. Her opinion that transactions were properly recorded is based on years of experience in the field and her review of corporate records and ledgers. The Court also believes that this testimony is helpful to the jury in evaluating the

various alter ego factors.  The Court is unable and unwilling to control the language that the parties' conflicting experts may use, holding that terms like "generally accepted" and "acceptable" may be used but terms like "proper" may not.  The fact that the experts may express themselves differently is not a basis for striking Mr. Peterson's testimony and any lingering confusion about her use of the term can be clarified through cross examination.

Reviewing Rule 702's requirements for admissibility of expert testimony and the Eleventh Circuit's interpretation of Rule 702, the Court finds that all requirements are met here.  Ms. Peterson is qualified to testify about the propriety of certain business practices in the industry, bases her opinion on reliable methodology, and provides testimony that will assist the jury.  There is no risk of prejudice, as any confusion over the meaning of Ms. Peterson's opinion or the extent of its reach may be clarified through cross-examination.

3. **Ms. Peterson's expert testimony that certain conduct was "common."**

Plaintiffs have also moved to prevent Ms. Peterson from testifying that certain conduct was "common" practice.  They argue that the issue of commonality – divorced from an opinion as to acceptability – is not

relevant to any issue in this case.   Having reviewed Ms. Peterson's deposition testimony, the challenge to her use of the word "common" seems limited to her testimony that it is "common" for companies (including closely-held companies, like PMSG) to employ family members and to pay them salaries for services rendered.   *See, e.g.*, Peterson Dep. 162:6-8.   The court concludes that the testimony – as offered by Ms. Peterson during her deposition – is admissible.

Ms. Peterson offered this testimony at three points during her deposition.   Peterson Dep. 162:6-8; 189:9-17; 194:23-195:9.   She testified that she had seen this practice in other companies and offered a rationale for describing the practice as "common."   She explained, "[family members] are, you know, sometimes the trusted employee who can provide valuable input into the business."   *See id.* at 189:14-17; *see also* 163:11-18.   She provided this testimony based on her experience working with and evaluating closely-held companies and other entities that employ family members of the founder or other leader.   *See id*. Importantly, Ms. Peterson did not merely say that the practice was "common" without further explanation.   Rather, when asked if she believes "it is standard or acceptable business practice for a small

closely-held or solely-held corporation to employ family members of one or more shareholders", she responded "[y]es, it is." *Id.* at 189:18-22. She also testified that the practice was not "unethical." *Id.* at 194:23 – 195:3. Throughout her deposition, Ms. Peterson clarified that when she used the word "common" in her written report, she meant that the conduct was acceptable and standard. In this regard, her testimony is no different than the testimony offered by Mr. Taylor that certain practices he observed were "highly unusual" or "contrary to acceptable business practice." Both experts will be permitted to offer their respective opinions to assist the jury in understanding the operations of PMSG and Hardin's role with respect to the company. Plaintiffs' motion to exclude Ms. Peterson's testimony about conduct that is "common" in the industry is, therefore, denied.

The Court notes that during the deposition, defense counsel asked Ms. Peterson, whether loans to shareholders "commonly happen [] in closely or solely-held companies." *Id.* 189:23-25. Plaintiffs' counsel appropriately objected to that line of questioning as beyond the scope of any opinion Ms. Peterson had previously provided, and defense counsel withdrew the question. *See id.* The Court, therefore, does not believe

that the parties will go beyond Ms. Peterson's proffered expert opinion to imply a different meaning of the word "common" than is discussed above.

### E.     Plaintiffs' Motion in Limine No. 2.

Also before the Court is Plaintiff's Motion in Limine No. 2 to Bar Defendants' Counsel from Repeating or Espousing Certain Improper Expert Opinions.  (Dkt. 80).  Consistent with the rulings made herein on Plaintiffs' motion to exclude, defense counsel may not repeat or reference any of Ms. Peterson's excluded opinions or testimony.  Motion in Limine No. 2 is granted as to Opinion A and those excluded portions of Opinion D.  Defense counsel may not reference those opinions at trial. *See United States v.* Epps, 613 F.3d 1093, 1100 (11th Cir. 2010) ("argument to the jury must be based solely on the evidence admitted at trial") (quotations omitted); *United States v. Martinez*, 96 F.3d 473, 476-77 (11th Cir. 1996) ("Lawyers know that argument to the jury must be based solely on the evidence admitted at trial.").  Motion in Limine No. 2 is denied with respect to Opinions B and F, which the Court has ruled admissible under Rule 702's requirements for expert testimony.

32

In their response to Motion in Limine No. 2, Defendants raised a separate issue – that any testimony ruled inadmissible through an expert may be introduced through a lay witness, provided that the testimony meets Rule 701's requirements.  Specifically, they argue that "[t]estimony concerning business practices, trade custom, and other similar opinion testimony based on a witness's personal experience is a proper subject for **lay opinion testimony**."  Dkt. 7 at 1 (emphasis added). The defense anticipates that both Hardin and Foley will testify as lay witnesses about their work with PMSG and their understanding of standard business practices and trade customs in general.  *See generally* Notice of Anticipated Lay Testimony, Dkt. 97.  The Court will address Hardin and Foley's testimony each in turn.

"[O]pinion testimony by business owners and officers is one of the prototypical areas intended to remain undisturbed" by the amendments to Rule 701.  *Tampa Bay Shipbuilding & Repair Co. v. Cedar Shipping Co.,* 320 F.3d 1213, 1222 (11th Cir. 2003).  Accordingly, assuming an adequate foundation of personal knowledge is established, Hardin should be able to testify about his position at PMSG and his "particularized knowledge garnered from years of experience within the

33

field." *Id.* at 1223.  This is not expert testimony.  The Court believes this testimony is rationally based on his perception and relevant to issues in the case.  It can help explain why Hardin thought certain conduct was acceptable business practice, or why he thought certain conduct would or would not threaten the corporate structure.

Hardin's testimony, however, should be limited to only that testimony for which defense counsel can establish an adequate foundation of personal knowledge.  Should Hardin speculate about another company's practices, Plaintiffs may object to that line of testimony.  The Court will then conduct a specific evaluation of the testimony at that juncture to determine if the appropriate foundation has been laid.  But, without knowing exactly what Hardin may attest above and beyond what the defense provided in its Notice of Anticipated Lay Testimony, and without knowing the specific basis for Hardin offering that testimony, the Court cannot categorically exclude certain subjects of lay witness testimony.  This tension is especially poignant here where the lay witness is also a defendant in this lawsuit.

Still, the Court urges the defense to review closely Rule 701's requirements for lay opinion testimony and to heed the Court's warning

34

that it will entertain objections from Plaintiffs should Hardin's testimony veer outside of what is appropriate under the Rules of Evidence and Eleventh Circuit law.  Importantly, defense counsel should not attempt to introduce expert testimony through Hardin, or any other lay witness. *See United States v. Blackburn*, 398 F. App'x 453, 466 (11th Cir. 2010) ("[A] party may not evade the requirements for expert testimony, set forth in Rule 702, by proffering an expert witness as if he were a lay witness.") (citing *United States v. Dulcio,* 441 F.3d 1269, 1275 (11th Cir.2006)).  The advisory committee notes to Rule 701 are clear that the rule is drafted "to eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing.'" *Tampa Bay Shipbuilding & Repair Co. v. Cedar Shipping Co.,* 320 F.3d 1213, 1222 (11th Cir. 2003) (citing Fed. R. Evid. 701, advisory committee note (2000 amends.)).  The Court directs defense counsel to provide Plaintiffs and the Court notice during trial before such testimony is elicited from Mr. Hardin so the Court may consider the foundation and other bases for admissibility in the context of the trial, but outside the presence of the jury.

For Foley, the scope of any lay opinion testimony he may offer is potentially more circumspect. He is not a defendant in this case, is not accused of being the alter ego of PMSG, and is not testifying as an expert. Accordingly, his belief about what is or is not acceptable business practice in the PEO industry is less relevant, and perhaps totally irrelevant, to understanding the issues in this case. *See* Notice of Anticipated Lay Testimony at 3 (citing Foley's anticipated testimony about the PEO industry, generally). Provided defense counsel can lay the proper foundation of personal knowledge, and provided Rule 701's requirements are satisfied, Foley may offer lay opinion testimony about his knowledge of or involvement with any of the corporate practices or conduct alleged in this case—*specifically as it relates to PMSG or Hardin*. *See* Fed. R. Evid. 701. But the Court is not convinced that Foley's testimony about the PEO industry in general is helpful to gaining a clear understanding of relevant testimony or a fact in issue. If Foley attempts to testify at trial about the PEO industry in general, an objection may be made and considered at that time. The Court repeats its warning that defense counsel should not attempt to introduce expert testimony through Foley. *See Blackburn*, 398 F. App'x

at 466.  The Court also directs defense counsel to provide Plaintiffs and the Court notice during trial before such testimony is elicited from Mr. Foley so the Court may consider the foundation and other bases for admissibility in the context of the trial, but outside the presence of the jury.

Accordingly, the cross-motions to exclude and Motion in Limine No. 2 are **GRANTED IN PART** and **DENIED IN PART**, consistent with the rulings in this opinion.

**IT IS SO ORDERED.**

Dated: March 14, 2018
Atlanta, Georgia

MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE